# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. |
| v. | ) | |
| MICHAEL LARA, | ) | |
| Defendant | ) | |

DEFERRED PROSECUTION AGREEMENT

This Deferred Prosecution Agreement (the "Agreement") is made between the United States Attorney's Office for the District of Massachusetts (the "USAO") and the defendant, Michael Lara ("LARA").

Information and Waiver of Indictment

1. LARA acknowledges and agrees that the USAO will file the one-count criminal Information attached hereto as Exhibit A (the "Information") in the United States District Court for the District of Massachusetts charging LARA with one count of Wire Fraud, in violation of 18 U.S.C. § 1343. In doing so, LARA knowingly waives his right to indictment on the charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, 18 U.S.C. § 3161, and Federal Rule of Criminal Procedure 48(b).

Term of the Agreement

2. The term of this Agreement (the "Term") shall begin on the date the Information is filed with the Court. The Term shall end on the earlier of:

a. February 17, 2027; or

b. the date on which the USAO informs LARA in writing that it is terminating this Agreement as a result of a material breach of LARA's obligations.

Acceptance of Responsibility

3. LARA acknowledges that the USAO has independently developed evidence during its investigation sufficient to establish beyond a reasonable doubt that LARA violated federal law as described in the attached Statement of Facts and the Information, and he accepts responsibility for this conduct. Should the USAO pursue the prosecution that is deferred by this Agreement, LARA stipulates to the admissibility of the Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the attached Statement of Facts at any such proceeding.

Restitution

4. LARA agrees to repay the Watertown Housing Authority ("WHA") $6,247.20, which is the total of the WHA funds LARA improperly used for personal purposes (together, the "Restitution"). Payment of the Restitution shall be in full prior to February 17, 2027.

Deferral of Prosecution

5. If LARA: (1) resigns from his current position at the Newton Housing Authority; (2) pays back the Restitution in full; and (3) does not commit a new violation of federal criminal law, the USAO will file a dismissal of the Information with prejudice no later than February 17, 2027.

6. This Agreement does not protect LARA from prosecution for any crimes except those arising out of the conduct described in the Information and the Statement of Facts. This Agreement does not apply to any individual other than LARA.

7. The USAO and LARA understand that the Court must approve the deferral of prosecution set out and agreed to in this Agreement in accordance with 18 U.S.C. § 3161(h)(2).

Specifically, for purposes of the Speedy Trial Act, the Court must approve the delay of a trial on the Information to allow LARA sufficient time to fulfill Paragraph 5.

<u>Tolling of Statutes of Limitations</u>

8. Should the Court decline to approve the deferral in accordance with 18 U.S.C. § 3161(h)(2), LARA agrees that all applicable statutes of limitation governing the federal criminal violations charged in the Information or for which he could have been charged as of the date of the USAO's execution of this Agreement based on the allegations that form the basis for the Information or are related to the Statement of Facts ("Chargeable Offenses") will be tolled from the date of the USAO's execution of this Agreement through the date when the Court declines to approve the deferral. If the Court approves the deferral, LARA agrees that all applicable statutes of limitation governing Chargeable Offenses will be tolled from the date of the Court's approval through the date this Agreement is terminated. LARA agrees that the period of time during which any applicable statutes of limitation are tolled in accordance with this paragraph may not be relied on by LARA in asserting any legal, equitable, or constitutional right he may have to a speedy trial pursuant to the Fifth or Sixth Amendments to the United States Constitution, 18 U.S.C. § 3161, any applicable local rule of the United States District Court for the District of Massachusetts, or any other legal or equitable principle.

<u>Breach of the Agreement</u>

9. Determination of whether LARA has failed to comply with Paragraph 5 will be in the USAO's sole discretion. If the USAO determines that LARA has breached, it will provide LARA written notice before instituting any prosecution resulting from such breach. Within thirty days after receiving such notice, LARA will have the opportunity to make a presentation to the USAO to demonstrate that: (a) he did not breach Paragraph 5, (b) the breach was not a knowing

breach and could not have been avoided with the exercise of due diligence, or (c) the breach has been cured. If LARA committed a new federal crime, the USAO will consider any such presentation in determining whether to pursue prosecution of LARA.

10. If, during the Term, LARA commits a new violation of federal criminal law, he will thereafter be subject to prosecution for any federal criminal violation of which the USAO has knowledge, including but not limited to the charges in the Information.

11. LARA agrees that, if the USAO determines that LARA has committed a new violation of federal criminal law and decides to pursue prosecution:

a. All statements made by LARA to the USAO or the Court, including the Statement of Facts, whether made before or after the date on which the Information is filed with the Court, shall be admissible in evidence in any and all criminal proceedings brought by the USAO against LARA;

b. LARA will not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that such statements or testimony should be suppressed or otherwise are inadmissible;

c. LARA will not assert that the conduct set forth in the Statement of Facts fails to provide a sufficient factual or legal basis to support the charges set forth in the Information; and

d. LARA will not assert any factual or legal challenge to his liability for the crimes charged in the Information; provided, however, that LARA will retain the right to claim that his lawyer rendered ineffective assistance of counsel, or that the Assistant U.S. Attorney engaged in prosecutorial misconduct.

12. LARA agrees that the consequences for breaching Paragraph 5 are remedies to which the USAO is entitled in the event of a breach and shall survive the termination of this Agreement in the event of a breach. LARA agrees that the USAO's remedies for a breach are not limited to those set forth in this Agreement. LARA further agrees that, in the event of a breach, LARA nevertheless will be bound by his waivers of legal, equitable, and constitutional rights set forth in this Agreement, and those provisions will survive even in the event of a breach.

Agreement Binding Only on LARA and USAO

13. This Agreement is binding only on LARA and the USAO and does not bind any other component of the U.S. Department of Justice, any federal agency, or any state or local law enforcement or administrative authority. Further, the waivers and other agreements made by LARA herein shall not be binding on LARA in any civil or criminal proceeding initiated by any person or entity other than the USAO.

14. Nothing in this Agreement restricts in any way the ability of the USAO to proceed against any individual or entity not a party to this Agreement.

Miscellaneous

15. This Agreement, including all exhibits, constitutes the entire agreement between the parties, and supersedes all prior agreements or understandings, both oral and written, with respect to the subject matter hereof and the disposition of this case. No promises, representations, or agreements have been made other than those set forth in this Agreement.

16. This Agreement may be modified or supplemented only in a written memorandum signed by the parties or by express agreement of the parties on the record in court.

Advice of Counsel

17. LARA acknowledges the following: he has read and understands the terms and provisions of this Agreement; he has had a full and complete opportunity to consult with legal counsel and to ask any questions about the terms and provisions of this Agreement; he fully understands the nature of the crimes alleged against him in the Information, the maximum penalties and Sentencing Guidelines provisions applicable to the offenses, and the penalties potentially applicable to him; he has discussed with counsel the charges against him, possible defenses he might have, and whether he should go to trial; his agreements and waivers stated herein are knowing and voluntary and are made with the advice of counsel; and he is satisfied with the legal representation provided by his legal counsel.

SO AGREED.

LEAH B. FOLEY
United States Attorney

By: ______________________
DUSTIN CHAO
Chief, Public Corruption Unit

______________________
LUCY SUN
Assistant United States Attorney

Date: 8/17/26

## ACKNOWLEDGMENT OF DEFERRED PROSECUTION AGREEMENT

I have read the Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, in its entirety and discussed it with my attorneys. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations concerning the disposition of this case have been made to me by any official of the United States. I acknowledge that the terms and provisions of this Agreement have been fully explained to me, including, without limitation: the legal, equitable and constitutional rights I am waiving under this Agreement; that I have had a full and complete opportunity to consult with legal counsel and to ask any questions about the terms and provisions of this Agreement; that I fully understand the terms and provisions of this Agreement; that my agreements and waivers stated herein are knowing and voluntary and are made with the advice of counsel; and that I am satisfied with the legal representation provided by my legal counsel. I am entering into this Agreement freely, voluntarily, and knowingly.

MICHAEL LARA
Defendant

Date: 8/21/26

I certify that Michael Lara has read this Deferred Prosecution Agreement, including the attached Statement of Agreed Facts, and that I have discussed its meaning with him. I believe he understands the Agreement and is entering into it freely, voluntarily, and knowingly.

BRIAN KELLY
Attorney for Defendant

Date: August 21, 2026

## STATEMENT OF FACTS

*LARA's Improper Use of WHA and WHDC Funds*

1. From July 2019 until January 2025, LARA was the Executive Director of the Watertown Housing Authority ("WHA") and president of both Watertown Housing Development Corporation ("WHDC") and WHDC Holdings, LLC.

2. As the Executive Director, LARA had access to WHA's charge account with Home Depot as well as WHDC credit cards.

3. According to the WHA "Credit Card Policy," "WHA credit cards shall only be used for the purchases of goods and services that are the official, business of the Watertown Housing Authority."

4. Despite the WHA policy, on or about September 9, 2022, LARA made personal purchases at Home Depot using the WHA charge account, including a stepladder.

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: 5524304 |
|---|---|---|---|
| $124.41 | 09/09/22 | 10/31/22 | |
| PO: ALLDEVS | Store: 2665, WEST ROXBURY, MA | | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 4' FG STEPLADDER, TIA 300LB | 00007960360000800004 | 1.0000 EA | $94.97 | $94.97 |
| WSTR PRO NYLON 2.5 THN AGL ALL PAINT | 00007227900000700002 | 1.0000 EA | $14.47 | $14.47 |
| WSTR HOOK AND HOLD 2.5 AGL SASH | 10078753130000700002 | 1.0000 EA | $14.97 | $14.97 |

Purchased by: LARA MICHAEL
Customer #: 00020

| | |
|---|---|
| SUBTOTAL | $124.41 |
| TAX | $0.00 |
| TOTAL | $124.41 |

5. On or about October 10, 2023, LARA made personal purchases at Target Corporation using the WHDC credit card. Among the items he purchased were a shower rod, floor mats, curtains, and artwork. LARA spent $411.52.

6. In November 2023, LARA began a remodel of the master bathroom of his Norwood residence with his contractor (hereinafter, "Contractor").

7. LARA and Contractor agreed that LARA would pay Contractor $13,875.00 for labor and building materials related to the renovation, and LARA would separately purchase the bathroom fixtures for Contractor to install.

8. According to Home Depot invoices, from November 7, 2023, to December 4, 2023, LARA made purchases using the WHA charge account at Home Depot for his master bathroom renovation, totaling $2,299.88.

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

705

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: |
|---|---|---|---|
| $322.94 | 11/07/23 | 12/31/23 | 1051098 |
| PO: 705 | | Store: 2681, NORWOOD, MA | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| BANBURY DBL ROBE HOOK BL | 10064331720000900002 | 1.0000 EA | $26.98 | $26.98 |
| FINDLAY 8" 2HDL BATH FAUCET BLK | 10092706340000300011 | 1.0000 EA | $179.00 | $179.00 |
| GENTA 3-PIECE BATH HARDWARE KIT MB | 10076903740000900002 | 1.0000 EA | $86.98 | $86.98 |
| GENTA HAND TOWEL RING IN MATTE BLACK | 10076903530000900002 | 1.0000 EA | $29.98 | $29.98 |

Purchased by: LARA MICHAEL
Customer #: 00022

| | |
|---|---|
| SUBTOTAL | $322.94 |
| TAX | $0.00 |
| TOTAL | $322.94 |

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

705
MV

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: |
|---|---|---|---|
| $1,639.00 | 11/13/23 | 12/31/23 | 5682006 |
| PO: 705-BATHROOMRENO | | Store: 8119, HOMEDEPOT.COM, 1-800-430-3376 | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| DUKES 60 IN. W X 22 IN. D X 34 IN. H | 10078281670002200010 | 1.0000 EA | $2,049.00 | $2,049.00 |
| DISCOUNT | 00000000000000000005 | 1.0000 EA | -$410.00 | -$410.00 |

Purchased by: MICHAEL LARA
Customer #: 00022
Customer Agreement #: WJ43852336

| | |
|---|---|
| SUBTOTAL | $1,639.00 |
| TAX | $0.00 |
| TOTAL | $1,639.00 |

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: |
|---|---|---|---|
| $188.00 | 11/24/23 | 12/31/23 | 4201918 |
| PO: 705 | | Store: 2681, NORWOOD, MA | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| FINDLAY 8" 2HDL BATH FAUCET BLK | 10092706340000300011 | 1.0000 EA | $179.00 | $179.00 |
| PAPER LAWN BAGS-30GAL-5PK | 00004072660000400003 | 4.0000 EA | $2.67 | $10.68 |
| DISCOUNT | 00000000000000000005 | 1.0000 EA | -$1.68 | -$1.68 |

Purchased by: LARA MICHAEL
Customer #: 00022

| | |
|---|---|
| SUBTOTAL | $188.00 |
| TAX | $0.00 |
| TOTAL | $188.00 |

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: |
|---|---|---|---|
| $149.94 | 12/04/23 | 01/31/24 | 4062953 |
| PO: 705 | | Store: 2681, NORWOOD, MA | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| MANOR 2LT MB CLEAR GLASS VAN LT | 10063268110001600002 | 1.0000 EA | $74.97 | $74.97 |
| MANOR 2LT MB CLEAR GLASS VAN LT | 10063268110001600002 | 1.0000 EA | $74.97 | $74.97 |

Purchased by: LARA MICHAEL
Customer #: 00022

| | |
|---|---|
| SUBTOTAL | $149.94 |
| TAX | $0.00 |
| TOTAL | $149.94 |

9. Under "PO" or "Purchase Order," employees purchasing items for WHA listed the name of the housing the purchase was for to provide context for the purchase. To conceal that the purchases were for his bathroom renovation, LARA caused the purchases to be fraudulently labeled as "705," to imply that the purchases were for Chapter 705 rentals.

10. On or about November 8, 2023, LARA made purchases for his bathroom renovation using the WHDC credit card for $3,160.69, at Moniques Bath Showroom. According to the sales order and the invoice, the "Bill To" individual was LARA and the "Bill To" address was LARA's residence. LARA purchased high-end items, such as a rain shower head for $443, a shower valve trim for $413, and a thermostatic mixing valve for $488:

moniques
BATH SHOWROOM
123 North Beacon Street
Watertown, MA 02472
Tel (617) 923-1167
Fax (617) 923-1596
www.MoniquesBathShowroom.com

BEST OF BOSTON HOME 2019

**Sales Order**

| Date | S.O. No. |
|---|---|
| 11/8/2023 | CS110823-10 |

| Name / Address | Ship To |
|---|---|
| Michael Lara<br>[redacted] | Aisle 6<br>called 11/14 |

| Order Placed by | Terms | Sales Rep | Customer Job |
|---|---|---|---|
| | | CS | |

| Qty | Item | Description | Unit Price | Status | Total |
|---|---|---|---|---|---|
| | | PRIMARY SHOWER | | | |
| 1 | 15TH0.L.R1-A-44 | LaCava, Cigno Compact Thermostatic Valve Trim Only With Lever Handle, Matte Black | 413.00 | P/U. 11/14 D | 413.00T |
| 1 | VTH0.1 | Lacava, Thermostatic Mixing Valve Only | 488.00 | TOOK FROM STK | 488.00T |
| 3 | 15ST.L.R-A-44 | Lacava, Cigno Stop Valve With Round Back Plate Lever Handle, Matte Black | 142.66667 | P/U. 11/14 D | 428.00T |
| 3 | VST | Lacava Volume Control/Stop Water flow rate: 12 gpm at 43.5 psi. Rough-in | 97.66667 | TOOK FROM STK | 293.00T |
| 1 | 0420-44 | LaCava, Arch 8" Rain Shower Head, Matte Black | 443.00 | P/U. 11/14 D | 443.00T |
| 1 | 8078-MBK | Jaclo, 3" Vertical Drop Shower Arm & Flange, Matte Black | 116.00 | P/U. 11/14 D | 116.00T |
| 1 | S182-2.0-MBK | Jaclo, Kiera Shower Head, 3 Function, 4" Dia. 2.0 gpm, Matte Black | 266.00 | TOOK FROM STK | 266.00T |
| 1 | 401A-44 | LaCava, 6" 45 Degree Shower Arm W/Flange, Matte Black | 37.00 | P/U. 11/14 D | 37.00T |
| 1 | 1560-44 | Lacava, Cigno Hand Shower Round With 59" Hose, Matte Black | 229.00 | P/U. 11/14 D | 229.00T |
| 1 | 1563-44 | Lacava, Cigno Water Inlet 1/2" Male X Male With Hand Shower Holder, Matte Black | 210.00 | P/U. 11/14 D | 210.00T |
| | Freight | Incoming Freight | 55.00 | | 55.00 |

11. Between November 2023 and January 2024, LARA sent Contractor text messages regarding his home renovation, including directing Contractor to install the fixtures LARA purchased at Home Depot and Moniques using WHA and WHDC funds.

12. On or about November 14, 2023, LARA texted Contractor, "Morning [Contractor]. Do you know when we would lose access to the bedroom closet altogether? When the tiles start going down? Vanity should be delivered later today to Home Depot. Will let you know when confirmed. Thanks for helping to pick that up."

13. Contractor responded, "Good morning we will start install the tiles the day after tomorrow" and "I will pick it up the vanity tomorrow morning."

14. On November 15, 2023, LARA texted Contractor, "Everything was picked up for shower yesterday. Will leave in bathroom." LARA also attached a photograph to the text message.




15. The photograph contained the sales order from Moniques from Paragraph 10, in which LARA purchased items using WHDC's credit card. Other items in the box include a black tube inside of a bag labeled "150 CM SHOWER TUBE" as well as a LACAVA box with a white sticker that read, "0420-44." The box was consistent with one of the purchases LARA made at Moniques, item code "0420-44," which was a "LaCava Arch 8" Rain Shower Head, Matte Black."

16. LARA then followed up with, "Vanity delivered to Home Depot but I'll need to go and provide ID for pick up. I have time this afternoon as I'm home today."

17. On November 18, 2023, LARA texted Contractor, "Morning [Contractor] – I am calling Home Depot to authorize you for pickup. Attached is order # and other info." LARA then sent two images to Contractor.







18. While the first image was the address of the pickup store, the second image was a description and image of the vanity, which was the same vanity in Paragraph 8, that LARA purchased using WHA's charge account.

19. On December 4, 2023, the same day that LARA purchased Hampton Bay lights on WHA's Home Depot charge account, LARA sent a picture of the lights to another individual.




20. On or about December 8, 2023, Contractor sent LARA a picture of LARA's bathroom with the Hampton Bay lights installed.



21. On or about December 17, 2023, LARA sent a picture of his master bathroom to another individual. The picture included the installed bathroom vanity with matte black faucet fixtures, all purchased using WHA's charge account at Home Depot. The picture also included the shower stall, with the matte black shower fixtures, purchased using WHDC's credit card.



22. On or about April 21, 2024, which is a Sunday, LARA made the following purchases at Home Depot, using the WHA charge account. LARA again caused the purchases to be fraudulently labeled as "705," to imply that the purchases were for Chapter 705 rentals.

BILL TO:
Acct: 6035 3225 0092 0396
WATERTOWN HOUSING AU

| Amount Due: | Trans Date: | DUE DATE: | Invoice #: |
|---|---|---|---|
| $250.70 | 04/21/24 | 05/31/24 | 5202713 |
| PO: 705 | | Store: 2681, NORWOOD, MA | |

| PRODUCT | SKU # | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|
| 5.6 LB TBGS SUN & SHADE MIX | 1008462047000060001 1 | 1.0000 EA | $39.97 | $39.97 |
| 0.75 CU FT SCOTTS PREMIUM TOPSOIL | 00004914940000300010 | 6.0000 EA | $2.97 | $17.82 |
| DEWALT 5 IN. VARIABLE SPEED DISK SAN | 10024061540000900035 | 1.0000 EA | $99.00 | $99.00 |
| TB RAPIDGRASS SUN & SHADE 5.6LB | 10058516240000600011 | 1.0000 EA | $36.97 | $36.97 |
| DISCOUNT | 00000000000000000005 | 1.0000 EA | -$10.00 | -$10.00 |
| TB RAPIDGRASS SUN & SHADE 5.6LB | 10058516240000600011 | 1.0000 EA | $36.97 | $36.97 |
| 5.6 LB TBGS SUN & SHADE MIX | 10084620470000600011 | 1.0000 EA | $39.97 | $39.97 |
| DISCOUNT | 00000000000000000005 | 1.0000 EA | -$10.00 | -$10.00 |

Purchased by: LARA MICHAEL
Customer #: 00022

| | |
|---|---|
| SUBTOTAL | $250.70 |
| TAX | $0.00 |
| TOTAL | $250.70 |

*LARA's Destruction of Evidence*

23. In 2024, the Massachusetts Office of Inspector General ("OIG") began an investigation into LARA for improperly using WHA funds. As part of their investigation OIG sent to WHA a series of requests for information.

24. As the Executive Director of WHA in 2024, LARA not only was aware of the requests, but responded to the requests, including a request dated August 20, 2024, in which OIG requested: (1) WHA's policies and procedures governing the use of credit cards; (2) list of WHA credit card purposes; and (3) list of all WHA employees with credit card access.

25. After learning of the OIG investigation, LARA removed the fixtures that he had purchased using the WHA charge account and WHDC's credit card.

26. On June 17, 2026, the Federal Bureau of Investigation ("FBI") executed a search warrant at LARA's residence. LARA had installed a new bathroom vanity, mirrors, shower fixtures, and sink fixtures. LARA kept the Hampton Bay lights.



27. During the search, FBI found at LARA's residence the ladder that LARA purchased on September 9, 2022, as well as the sander LARA purchased on April 21, 2024.